Chief Justice SrMFSON
delivered tlie opinion of the Court.
John Carroll, at the time of his death, was the owner of a small tract of land, several slaves, and some personal estate, the whole of which he devised to his wife. She enjoyed the property during her life, and at her death made a nuncupative will, in which, with some unimportant exceptions, she devised her whole estate *638 to the legatees of her husband, to be divided among them according-to the directions of his will.
John Carroll had several children by a previous marriage, hut none by bis last wife, to whom he devised all of his estate.. She died without ever having had issue, leaving her brothers and sisters, and the descendants of such, of them as were dead, her heirs a.t law. As the land and slaves devised to her by her husband did not pass by her nuncupative will, they are claimed by her brothers and sisters. They are also claimed by the children of the testator under his will, who contend that the testator’s wile took only an estate for life in them. These conflicting claims gave rise to the present controversy; the result of which depends exclusively upon the legal effect and operation of the will of John Carroll, which, so fir as it is material to the matter in contest, reads as follows:
“I give and bequeath to my beloved wife, Priscilla Carroll, the land on which I now live, and all other land I now have or may have hereafter; also, all my slaves, stock of all kinds, farming utensils of all descriptions, household and kitchen furniture, including all my estate, both real and personal. But should she and my executors, hereafter named, see proper to dispose of any part of any kind, they are at liberty to do so, and apply the proceeds thereof amongst my children or legatees hereafter named as may seem to them just and equitable, according to the following manner: I give to the children of my daughter Polly Creekbnum, as one legatee, they being first charged with seventy-seven dollars, being the amount given to her by me in her lifetime.”
The will proceeds in the same manner to point out which of his children the estate shall be given to, and how much eacli one is to be charged with, on account of advances previously made.
The testator subsequently made a condicil, oras he termed it, an appendage to his will, that reads as follows»
*639 It is my desire, in addition to what is bequeathed to my wife, that she and my executor is hereby authorized to sell aud dispose of any of my real and personal estate, they may think proper, and that my wife have as much of the proceeds of such sale as she may desire for her own use and benefit, and the overplus, if any, to be applied in manner ns I have directed in the ¡first part of the will on that subject.”
It is manifest from these provisions, the testator intended to give, and supposed lie liad given to his wife only an estate for life. In the body of the will he authorized her, in-conjunction with the executor, if they thought proper to do so, to sell any of the property devised, but they were required to distribute the proceeds of the sale “among his children or legatees,” in the manner he prescribed. íáuch a limitation upon her power over the estate devised, is inconsistent with the idea, that he intended it to belong to her absolutely. She was to have it as long as she lived, and enjoy it in kind, but if she sold any of it, the part so sold, she was not to retain any longer, but it was to pass immediately to the legatees. That the testator understood this to be the effect of his will as it was first written, is evident from the contents of the codicil, which was made to enlarge the estate previously given to his wife, or in the language used by him, to authorize her, in “ addition to what is bequeathed” to her, in conjunction with the executor, to sell any part of the property, and apply so much of the proceeds to her own use as she may desire, and the overplus, if any, in the manner prescribed in the first part of the will. If the property had been devised to her absolutely and in fee, the codicil was wholly unnecessary. She would have had a right in that case to dispose of the property as she pleased,, ¡and the testator must have known it. He considered -.the limitation he had put upon her right to use it for iher life in kind, as too restricted, and therefore authorized her, with the assent of the executor, to convert ¡part of it into money if she desired to do so for her *640 own use, without being under obligations to pay the sale money over to the legatees.
But it is contended that the authority contained in the codicil to sell and dispose of the property for her own benefit as she might think proper, vested in her the absolute right to the estate devised, as it virtually placed it in her power to have made it her own by its conversion into money. It may he conceded that in the case of a gift to a person indefinitely, with a power superadded to dispose of the property, the legatee would hold the propel ty as his own absolutely. But there is a very material distinction between the present case, and one of that kind. Here the devisee was first given the authority to sell merely ; and her power over the disposition of the proceeds of the sale when made, was regulated, and limited hv the provisions of the will. The power was enlarged by the codicil so as to authorize her to apply' the proceeds of the sale, when made, to her own use, so far as she desired to use them! the ballance, however, she was to pay over to the legatees of the testator. She was not vested with a general power to dispose of the property at her discretion she could dispose of it in one mode only. She might sell and use as touch of the sale money as was necessary, or as she desired, but the residue si e was to apply according to the requisitions of the will. The testator obviously intended lhat the powpr conferred should be exercised alone for her own personal use and the benefit of his children, and not in such a manner as to enable her to dispose of the property as she pleased. Besides the power to sell was not given to her alone, but to her and the executor jointly. Without the assent of the latter, she could make 1.0 disposition whatever of the property. He was the trustee of all the devisees under the will, and it was his duty to see that the intention of the testator was not frustrated, but carried inlo effect. Any right that she acquired under the codicil was conditional, depending upon a sale of the property, by the joint concur *641 rence of her and the executor, and no such sale having been made, the estate devised must pass by the will in the same manner it would have done, if no such power had been conferred.
Though by the 11th sec., of (ho act of 1796, (Stoi. law, 443,) every grant, eon. veynnce, or devise of lands fiom one person to another, “although (he words necessary hereto fore to convey an estate of inheritance be not added is to be deemed an estate in iee simple,” if a less estate be not limited by expre-s words or do not appear to have been granted, conveyed, or devised by construction of yet it doj not pieclude th questions which mav arise upon wills whieh contain indefinite do vises without words of limitation wle'her an estate in fee sim pie passes, or only an estate for life the intention is to be reached by construing the whole will together.
No principle was more fairly established by the common law than that ;i devise of real estate without words of limitation or inheritance, conferred upon the devisee an estate for life only. But the Courts, in many cases where the estate devised was not expressly defined, adopted certain rules of construction, to enlarge the estate to a fee simple, where such appeared, or might reasonably be inferred, to have been the intention of the testator. But this technical principle of the common law has been changed in this as well as in nearly every other State in the Union, by legislative enactments.
By the 11th section of our statute of 1796 to reduce into one the several acts for regulating conveyances, (1 Statute Law, 443,) it was enacted that “ every estate in land, which shall hereafter be granted,' conveyed, or devised to one, although other words heretofore necessary to transfer an estate of inheritance be not added, shall be deemed a fee simple, if a less estate be not limited by express words, or do not appear to have been granted, conveyed, or devised by construction or operation of law.”
The effect of this enactment is to change the rule of construction, and make an indefinite devise, without any words of perpetuity annexed, pass an estate in fee simple to the devisee. But it does not wholly preclude the question from arising upon wills which contain an indefinite devise without words of limitation, whether an estatee in fee simple passes to thedevls.ee, or only an estate for life ? It is still a question of intention, but the rule of construction is reversed. Formerly an estate for life only would pass by an indefinite devise, unless a contrary intention could be inferred from the will. Now an estate in fee will pass by such a devise, unless an intention to pass a less estate ap *642 pear by construction or operation of law. The operation of an indefinite devise is enlarged, where it stands alone, and unaffected by anything contained in the context. But the effect of such a devise still depends upon the intention of the testator, to be gathered from his whole will, according to the settled rules of legal construction.
A devise to the ■wife being indefinite and not expressly- for life, •will vest the fee simple - unless there be something else in the will to show that a life- estate only was in I ended and by which ef-iect can be given to other parts of the ■ will.
If a devise were made to A, remainder after the death of A to B in fee, A would take but an estate for life. For although the devise to him would be indefinite, and vest in him the fee to the property, did it not appear that a less estate had been devised, yet as the devise to B in fee, after the death of A would not take effect, if the devise to the latter vested in him an absolute title to property, his interest would, by legal construction, be limited to an estate for life, so that the intention of the testator, with regal’d to the-devise to B, might not be defeated. '
So in the present case; the devise to the wife being indefinite, and not expressly for life, it would have vested in her the fee simple title to the estate devised,, if a contrary intention did not certainly and manifestly appear. As the testator designated such of his children as were to be his legatees, and fixed the amount with which they were to be charged in the division of the estate, on account of previous advancements, and directed the sale money to be paid to them, if his wife and his executor chose to sell any part of the property, unless she desired to use a part of it, which she was permitted to do, no doubt can exist that he intended them to have the property devised, after the death of his wife. The law, therefore, although there is no express devise over, vests in them, by implication, ari estate in fee in remainder, in the property devised after the death of the' wife; To'give effect to this implied devise over the deviso’to the wife is limited by'operation of law to an estate for life, Thus the intention of the testator, instead . of being:defeated, is effectuated, the accomplishment of which purpose is the prime object of all the *643 rules of construction which have been adopted on the subject.
Turner for plaintiffs ; Noland for defendants.
The Court below decided that the wife took a life estate only under the will, and dismissed the cross bill filed by her heirs, asserting title to the property devised. That decision is in conformity with the views expressed in this opinion. It is stated in the decree of the Court below, that after the death of the wife the estate descended to the heirs at law of the testator. They take as devisees under the will, and not by descent from the testator. But the heirs of the wife are the plaintiffs in error, and so far as they are concerned, thei’e is no error in the decree, nor has any final decree been rendered dividing the estate among the children of John Carroll, deceased.
Wherefore the decree .is affirmed.'